LOUIS MOURATIDIS,

        Plaintiff,

v.

JUDGE DEBORAH S. KATZ,
JUSTICE VIRGINIA A. LONG,
JUDGE STEPHEN SKILLMAN, DAVID
P. ANDERSON, JR., MATTHEW
BOXER, PAUL J. WALKER, SUSAN
A. FEENEY, KAREN KESSLER,
VINCENT E. GENTILE, JUDGE
EDWARD H. STERN, CLERK JOSEPH
H. ORLANDO, and DEPUTY CLERK
JOHN K. GRANT,

        Defendants.

CIVIL NO. 18-15528 (NLH/KMW)

**OPINION**

**APPEARANCES:**

LOUIS MOURATIDIS
11 SOUTH 36TH STREET
PHILADELPHIA, PA 19104

    *Appearing pro se.*

**HILLMAN**, District Judge

This case concerns various claims made by Plaintiff Louis Mouratidis against a New Jersey Superior Court Judge, members of the New Jersey Supreme Court's Advisory Committee on Judicial Conduct, and the clerk and deputy clerk of the New Jersey Superior Court, Appellate Division. This matter is before the Court because Plaintiff is proceeding in forma pauperis and the

Court must screen this complaint before allowing the case to proceed.  Also before the Court are Plaintiff's Motions for a Preliminary Injunction and a Temporary Restraining Order, Motion to Amend, and Request for Leave of Court Under the Doctrine of Relation Back (collectively, the "Pending Motions").  This Court will dismiss Plaintiff's complaint, with prejudice.  As a result, this Court will also dismiss all Pending Motions as moot.

**BACKGROUND**

This Court takes it facts from Plaintiff's Complaint filed on November 1, 2018.[1]  Plaintiff has named twelve putative Defendants: Justice Virginia A. Long, Judge Stephen Skillman, David P. Anderson, Jr., Matthew Boxer, Paul J. Walker, Susan A. Feeney, Karen Kessler, Vincent E. Gentile, Judge Edward H. Stern (collectively, the "ACJC"), Judge Deborah S. Katz, Clerk Joseph H. Orlando, and Deputy Clerk John K. Grant (collectively, Mr. Orlando and Mr. Grant will be referred to as the "Clerk Defendants").  Plaintiff claims these individuals have perpetrated a series of state and federal crimes against him, violated New Jersey statutes, violated rules of conduct, and

---

[1] This Court notes that the analysis of Plaintiff's Complaint would apply with equal force to Plaintiff's proposed Amended Complaint (ECF Nos. 14-1, 16-1), which adds language that is inconsequential to this Opinion concerning exhaustion and relief requested.

violated constitutional rights giving rise to claims under 42 U.S.C. §§ 1983, 1985, and 1986.

In spite of the amount of violations claimed of state and federal law, the facts of this case are straightforward. Between April 2017 and January 2019, Plaintiff has attempted to petition for a waiver of transcript fees. Plaintiff alleges he needs these transcripts in order to modify or dissolve a final order in a Family Part proceeding in the Superior Court, Chancery Division. His requests were heard before Judge Katz, a New Jersey Superior Court judge in the Camden Vicinage who serves as the Assignment Judge. Plaintiff claims his petitions were properly filed and meritorious. All have been denied.

As a result, Plaintiff resorted to two alternate means to have his petitions heard before another Superior Court judge. First, Plaintiff filed motions for recusal before Judge Katz. Second, Plaintiff filed a grievance before the New Jersey Supreme Court's Advisory Committee on Judicial Conduct, comprising of the nine individuals described supra. The motions for recusal were denied. The grievance was also denied because Plaintiff essentially complained that Judge Katz's decision was incorrect and not that her conduct was in some way improper, according to the ACJC's description of the complaint. The ACJC advised Plaintiff that the proper avenue for his grievance would be an appeal.

As a result, Plaintiff thereafter filed an appeal with the New Jersey Superior Court, Appellate Division in October 2018. Plaintiff received a letter shortly thereafter from Defendant Orlando stating that his appeal was deficient and would be dismissed for three reasons. Plaintiff did not thereafter attempt to amend his filing to correct the deficiencies noted by Mr. Orlando.

Instead, Plaintiff filed this action. In it, Plaintiff alleges that the members of the ACJC and Judge Katz conspired to deny him the ability to receive transcripts at public expense. This conspiracy, Plaintiff alleges, "discriminated by its disruptive impact against the Plaintiff" and:

> deprived [Plaintiff] again (directly) of the laws [of] the State of New Jersey [i]njured in his persons & deprived of flexing & exercising rights & privileges of a Disabled Citizen of the United States of America, rights to properly petition, right to contest civil injunctions, rights not to be enslaved. In direct violations to the First - Fifth & Fourteenth Amend. U.S.C.A. In which has promoted the 8th Amend. Violation incorporating the New Jersey Const. Art. I. Sec. 1. Sec. 12.

(Pl. Compl. ¶ 25.)

> Additionally, Plaintiff claims the ACJC:

> has without doubt, willfully neglected to investigate and or cover up the actions of the judge who committed the illegal countless acts and actions in accordance to N.J.R.G.A. 2:15-8(a)(1) - (2) - (3) - (4) (5) and (6), incorporating the N.J. Rules of Judicial Conduct Canons R. 1.1 - 1.2 - 2.1 - 3.2 - 3.9.

(Pl. Compl. ¶ 28.)

4

Finally, Plaintiff alleges the Clerk Defendants[2]:

> refused to file Plaintiff[']s legislative proper appeal and documents by fabricating that the Plaintiff has not filed the proper documents, in which is inconsistent with the evidence of exhibits provided.

(Pl. Compl. ¶ 38.)

Plaintiff generally complains of psychological injuries as a result of the actions of the putative Defendants. Specifically, Plaintiff alleges he suffers from "Massive Post Traumatic Stress Disorder under his Rehabilitation, Sub category specifically from Abusive Legal Proceedings generically coined, Legal Abuse Syndrome - Judicial Legal Combet [sic] Trauma, It's an assault on the stress of the human mind, via: brain." (Pl. Compl. ¶ 40.) Plaintiff does not clearly request any particular relief, although it appears he requests this Court to dissolve the restraining order and grant him declaratory relief in addition to punishing putative Defendants under various criminal statutes.[3]

This Court, after receiving Plaintiff's Complaint,

---

[2] This is a liberal reading of the Complaint, as it appears Plaintiff only mentions Mr. Orlando and not Mr. Grant. Besides including his name in the caption, Plaintiff provides no additional facts about Mr. Grant's actions which required his inclusion in this matter.

[3] In Plaintiff's Amended Complaint, it appears he requests declaratory relief, injunctive relief (preventing Judge Katz from deciding any further indigency petitions and requiring the filing of a brief), and possibly compensatory damages.

administratively terminated the action until Plaintiff filed the correct in forma pauperis application (the "IFP Application"). Plaintiff did so in November 2018 and the Court granted his IFP Application, but restricted the Clerk from filing his Complaint or issuing summons until the screening process was completed. In the interim between the filing of this Opinion and the grant of Plaintiff's IFP Application, Plaintiff filed the Pending Motions with supporting legal briefs and filed a notice stating he had filed another petition for waiver of transcript fees. Plaintiff's Complaint is ripe for screening.

**ANALYSIS**

**A.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367.

**B.    Screening Standard**

Although § 1915 refers to "prisoners," federal courts apply § 1915 to non-prisoner IFP applications. See Hickson v. Mauro, No. 11-6304, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011) (citing Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005)); Lister, 408 F.3d at 1312 ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners."). Once IFP status has been granted, a court must follow the screening provisions of the IFP statute. The screening provisions of the IFP statute require a federal court

to dismiss an action <u>sua sponte</u> if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); <u>Ball v. Famiglio</u>, 726 F.3d 448, 452 (3d Cir. 2013); <u>Martin v. U.S. Dep't of Homeland Sec.</u>, No. 17-3129, 2017 WL 3783702, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for <u>sua sponte</u> dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.").

As indicated, this Court must follow the Rule 12(b)(6) standard in considering a pro se complaint. Pro se complaints must be construed liberally, and all reasonable latitude must be afforded the pro se litigant. <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976). But, pro se litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure." <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); <u>Sykes v. Blockbuster Video</u>, 205 F. App'x 961, 963 (3d Cir. 2006) (finding that pro se plaintiffs are expected to comply with the Federal Rules of Civil

Procedure).

When screening a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps.  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Third, "whe[n] there are well-pleaded factual

8

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

## C.    Screening of Plaintiff's Complaint

Under the standard explained <u>supra</u>, this Court will screen Plaintiff's Complaint in order to determine whether any claims listed therein may proceed.  This Court will address the criminal claims, the state law claims, the claims under various rules of conduct, and finally the constitutional claims under 42 U.S.C. §§ 1983, 1985, and 1986.

### a. <u>Plaintiff's Claims under State and Federal Criminal Statutes</u>

This Court first considers the claims made by Plaintiff under New Jersey and federal criminal statutes.  The alleged violations include:

- N.J. Stat. Ann. 2C:16-1,

- N.J. Stat. Ann. 2C:5-2,

- N.J. Stat. Ann. 2C:5-1,

- N.J. Stat. Ann. 2C:13-5,

- N.J. Stat. Ann. 2C:5-2,

- N.J. Stat. Ann. 2C:5-2,

- N.J. Stat. Ann. 2C:30-2,

- N.J. Stat. Ann. 2C:30-6,

- 18 U.S.C. § 241,

- 18 U.S.C. § 242,

- 18 U.S.C. § 372,

- 18 U.S.C. § 872,

- 18 U.S.C. § 2331.

Plaintiff has brought these claims in a civil action.[4]  This Court lacks the authority to grant Plaintiff this type of relief in a federal civil action.  See Concepcion v. Resnik, 143 F. App'x 422, 425-26 (3d Cir. 2005) (citing United States v. Friedland, 83 F.3d 1531, 1539 (3d Cir. 1996) ("The United States Attorney is responsible for the prosecution of all criminal cases within his or her district.")); see also Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009) ("[I]ndividual citizens do not have a constitutional right to the prosecution of alleged criminals.").  Accordingly, all of Plaintiff's claims which cite criminal statutes – whether state or federal – and attempt to initiate a criminal prosecution against the putative Defendants will be dismissed, with prejudice.

b. Plaintiff's Other State Law Claims

Plaintiff also appears to plead claims under various New Jersey statutes.  This Court will examine each in turn.  First, Plaintiff cites to New Jersey Statute § 41:1-1, which pertains

---

[4] Even though Plaintiff has filed this complaint as a "Civil and Criminal Action Complaint" Plaintiff does not have the power to bring a criminal complaint.  As explained supra, it is only the United States Attorney's Office which may bring criminal actions before this Court.

to the requirement of certain individuals to take an oath of allegiance and the form of that oath. This statute does not provide a private cause of action. Even if it did, Plaintiff does not provide any facts showing that any of the individuals in this case who were required to take this oath – which he does not specify - did not take the oath. Accordingly, this Court will dismiss any claims made under this statute, with prejudice.

Second, Plaintiff cites to New Jersey Statute § 41:2-2. This statute relates to the oath taken by witnesses prior to examinations before the New Jersey legislature or committees thereof. There are no allegations contained in the complaint concerning testimony before a New Jersey legislative body.[5] Additionally, there is no private cause of action under this particular statute.[6] Accordingly, this Court will dismiss any claims made under this statute, with prejudice.

Third and finally, Plaintiff cites to New Jersey Statute §

_____

[5] The ACJC is not a committee of the legislature, but one of the judicial branch, being created by the New Jersey Supreme Court to aid it in disciplining New Jersey judges. To be clear, even if there were live testimony alleged before this body – which it appears there was not – this statute would be inapplicable.

[6] This Court notes that an individual could be charged with perjury, but the only item in this case that could be remotely considered as testimony is Plaintiff's grievance. Moreover, even assuming there was perjury – which is not asserted by Plaintiff – perjury is a criminal charge that Plaintiff cannot bring before this Court in a civil action.

47:1A-1, which describes legislative findings and declarations.
This portion of the statute also does not grant Plaintiff a
private right of action.  Generally, however, this Court
acknowledges this is New Jersey's codification of the Open
Public Records Act ("OPRA").  It appears that, even if Plaintiff
cited a proper section of OPRA, the facts Plaintiff has pleaded
provide no support for a claim.  Plaintiff was never "denied
access to a government record," but was merely denied the
ability to receive transcripts free of cost.  N.J. STAT. ANN. §
47:1A-6.  Without a denial of access, Plaintiff has no right to
"institute a proceeding to challenge the custodian's decision."
N.J. STAT. ANN. § 47:1A-6.  Accordingly, the Court will also
dismiss this claim, with prejudice.

      c. <u>Plaintiff's Claims under the New Jersey Rules of
        Judicial Conduct and the American Bar Association's
        Rules</u>

Plaintiff appears to assert claims under the New Jersey
Rules of Judicial Conduct ("NJRJC") and under one American Bar
Association Rule ("ABA Rule").  Plaintiff specifically cites
NJRJC Canons 1.1, 1.2, and 3.17(B)(1) and ABA Rule 2.3.  While
this Court may consider alleged disciplinary violations to the
extent they animate a violation of some other state or federal
right, they do not of themselves provide a private right of
action.

If, instead, Plaintiff wishes to institute disciplinary

proceedings, this Court is without jurisdiction.  This Court's
disciplinary jurisdiction, if properly invoked,[7] only applies to
"an attorney authorized to practice law or appearing before this
Court."  L. Civ. R. 104.1(e)(1).  There are no facts within
Plaintiff's complaint suggesting any individual fits within any
of the two categories which allow disciplinary jurisdiction.  To
the extent Plaintiff asserts claims under these rules, those
claims are dismissed, with prejudice.

### d. Plaintiff's Constitutional Claims

Finally, Plaintiff brings claims under 42 U.S.C. §§ 1983,
1985, and 1986.  This Court will assess these claims per group
of Defendants and will address immunity and abstention doctrines
for each.  First, the Court will address claims against Judge
Katz, second, claims against the ACJC, and third, claims against
the Clerk Defendants.  Since the immunity analysis concerning
all defendants is identical with respect to official capacity
claims, the Court will start there, before considering
Defendants group by group.

#### i. Official Capacity Claims Against All Defendants

Plaintiff asserts 42 U.S.C. §§ 1983, 1985, and 1986 claims
against all Defendants in their official capacities.  This Court

---

[7] As is further disclosed by Local Civil Rule 104.1(e)(2),
disciplinary proceedings may only be instituted by the Chief
Judge of this District.

will first examine the official capacity claims asserted against all Defendants to the extent these claims serve as a basis for monetary damages. Based upon the analysis <u>infra</u>, this Court will dismiss all damages claims against all Defendants in their official capacities.

"Suffice it to say, the Eleventh Amendment . . . has been interpreted to render states – and, by extension, state agencies and departments and officials when the state is the real party in interest – generally immune from suit by private parties in federal court." <u>Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess</u>, 297 F.3d 310, 323 (3d Cir. 2002).

Specifically, the Courts have found that New Jersey state courts and the ACJC fall under the umbrella of Eleventh Amendment immunity from a damages suit. See <u>Capogrosso v. Supreme Court of N.J.</u>, 588 F.3d 180, 185 (3d Cir. 2009) (dismissing claims against ACJC members who were sued in their official capacity because the court found they were entitled to Eleventh Amendment immunity); <u>Prall v. Supreme Court</u>, No. 11-7004 (JBS), 2013 U.S. Dist. LEXIS 48788, at *21-23 (D.N.J. Apr. 4, 2013) (dismissing claims against the Superior Court of New Jersey, Appellate Division and the Superior Court of New Jersey, Law Division, Criminal Part because the court found they were entitled to Eleventh Amendment immunity); <u>Johnson v. State of N.J.</u>, 869 F. Supp. 289, 296–98 (D.N.J. 1994)) (finding that the

state courts, its employees, and judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered "arms" of the state).

Thus, because the Defendants are either (1) a Superior Court Judge, (2) New Jersey state court employees, or (3) members of the ACJC, Plaintiff cannot request damages against these Defendants in their official capacity.  Thus, to the extent these claims are asserted they are dismissed, with prejudice.

### ii. Constitutional Claims against Judge Katz

Plaintiff also asserts claims under 42 U.S.C. §§ 1983, 1985, and 1986 against Judge Katz in her personal capacity. This Court will first determine whether any immunities exist for Judge Katz in her personal capacity.  Then, the Court will determine whether the Rooker-Feldman doctrine is applicable to the decisions rendered by Judge Katz.

Plaintiff's Complaint reveals that the only action taken by Judge Katz were her denials of Plaintiff's petitions to receive transcripts at public expense.  The law is clear.  "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for [her] judicial acts." Capogrosso, 588 F.3d at 184 (quoting Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006)).  Further, "[a] judge will not be

deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of his authority; rather, [s]he will be subject to liability only when [s]he has acted 'in the clear absence of all jurisdiction.'"  Id. (quoting Azubuko, 443 F.3d at 303 (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978))).

As in Capogrosso, there are no allegations here that Judge Katz acted in the "clear absence of all jurisdiction."  Denial of a petition is a judicial act, which – whether rightly or wrongly decided – was within the jurisdiction of Judge Katz.  As a result, Judge Katz must receive absolute judicial immunity in this case for any damages requested against her in her personal capacity.

Next, the Court considers the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine "strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court judgments.'"  Williams v. BASF Catalysts LLC, 765 F.3d 306, 315 (3d Cir. 2014) (quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010)).  In other words, the Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Id. (quoting Lance v. Dennis, 546 U.S. 459,

17

464 (2006)).

Four elements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court [judgment]; (3) [that judgment was] rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state [judgment]." Great W. Mining, 615 F.3d at 166.

Here, all four elements have been met. Plaintiff lost in the state court action to receive waiver of transcript fees. Plaintiff complains his injuries were caused by this decision. The decision was rendered before Plaintiff filed suit here. Finally, the Plaintiff requests the Court to order Judge Katz to change her ruling, waive the transcript fees, and provide the transcripts to Plaintiff. Any award for either damages or equitable relief would necessarily require this Court to determine that Judge Katz incorrectly denied Plaintiff the waiver of transcript fees.

In other words, this case is merely an appeal of the state court judgment to the federal court. That requires this Court to invoke the Rooker-Feldman doctrine as to the decision of Judge Katz. Therefore, this Court must abstain from any decision that would bear on the requested compensatory, declaratory, and injunctive relief.

### iii. Constitutional Claims Against the ACJC

This Court will not consider any further immunities that may be applicable to the ACJC.  Instead, the Court will only consider whether the Rooker-Feldman doctrine also applies to the decision of the ACJC that Plaintiff challenges.  It does.

The same test, as explained supra, applies here.  Plaintiff lost in state court, here before the ACJC, in his bid to remove Judge Katz from the case.  Although the ACJC is not the typical example of a "state court," it has previously been considered to fit this test.  In the case of Hunter v. Supreme Court of New Jersey, this District determined that disciplinary proceedings before the ACJC – even if unaccompanied by a hearing or formal legal analysis – is subject to Rooker-Feldman abstention.  951 F. Supp. 1161, 1170-75 (D.N.J. 1996).  Plaintiff complains of injuries suffered because of the decision not to order recusal – here being before Judge Katz who has denied his applications to waive transcript fees.  The ACJC's judgment not to order recusal was made before this case was initiated, as Plaintiff makes clear in his complaint.  Finally, the Plaintiff explicitly requests this Court to both review and reject the opinion of the ACJC, requesting this Court to prevent Judge Katz to take any further action with his applications.  In other words, Plaintiff asks this Court to order recusal when the ACJC determined it was not warranted.

Accordingly, this Court must abstain from any decision that would bear on the requested compensatory, declaratory, and injunctive relief.

### iv. Constitutional Claims Against the Clerk Defendants

Finally, the Court considers the constitutional claims against the Clerk Defendants. First, the Court will consider immunities that apply to the Clerk Defendants in their personal capacity. "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges – that is, because they, too, 'exercise a discretionary judgment' as a part of their function." Tucker v. I'Jama, 173 F. App'x 970, 971, (3d Cir. 2006) (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993)).

According to Plaintiff, Clerk Defendants dismissed his appeal because of (1) a failure to submit a "Civil Case Information Statement," (2) a failure to provide proof of service to Maria Macry, and (3) illegible filings. Thus, the Clerk Defendants exercised discretionary judgment – functionally comparable to that of a judge – in determining whether Plaintiff's filings were adequate. Thus, absolute quasi-judicial immunity applies to the Clerk Defendants and they may not be sued for damages in their personal capacity.

Plaintiff does not request injunctive relief against Clerk Defendants, but does request the Court to declare the actions of the Clerk Defendants as a violation of his Constitutional rights. The Court cannot do so here because Plaintiff's allegations show, on their face, that there has been no constitutional violation. While Plaintiff alleges he filed the proper statement and could not serve Ms. Macry because of a restraining order[8], Plaintiff has not disputed that his filings were illegible. Thus, Plaintiff admits that the Clerk Defendants had a basis in New Jersey's court rules to dismiss Plaintiff's appeal when he failed to correct this deficiency. If the Clerk Defendants correctly dismissed the papers, Plaintiff has no constitutional basis for his claims against them. Plaintiff does not assert that New Jersey's court rules are facially unconstitutional. Accordingly, this Court will dismiss all constitutional claims against Clerk Defendants either for compensatory or declaratory relief.

---

[8] Plaintiff claims the restraining order restricted him from making or causing to be made "a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other Manner likely to cause annoyance or alarm." (Pl.'s Compl. ¶ 45(ii)(a).) Because of this restraining order, Plaintiff claims he could not have served Ms. Macry. But, his very own allegations show that is untrue, as contact was not absolutely prohibited. Plaintiff could serve Ms. Macry as long as it complied with the restraining order. On this alternate basis, the Clerk Defendants appropriately dismissed Plaintiff's appeal.

Thus, all claims against all Defendants on all bases for relief will be dismissed by this Court.  The Court will thus file Plaintiff's complaint and dismiss it for the foregoing reasons.

**D. The Pending Motions**

Because this Court has dismissed Plaintiffs claims, with prejudice, the Pending Motions must also be dismissed as moot. Without a complaint before this Court, Plaintiff cannot receive further relief through motion practice.

**CONCLUSION**

For the reasons stated herein, this Court will dismiss Plaintiff's complaint, with prejudice.  The Pending Motions will also be dismissed, as moot.

An appropriate Order will be entered.


Date:  May 7, 2019              s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.